FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 SEP -7 PM 3: 49

STEPHAN HARRIS, CLERK
CHEYENNE

## US DISTRICT COURT OF WYOMING

2120 Capitol Avenue Room2131
Cheyenne, WY 82001

Plaintiffs:   JIYING WEI,

v.

Defendants: SCHOOL OF PHARMACY,
            COLLEGE OF HEALTH,
            UNIVERSITY OF WYOMING, the
            State University of Wyoming
JANELLE KRUEGER, Clinical
Associate Professor, in her individual and
            official capacities;
TONJA WOODS, Associate Dean of Students,
            in her individual and official
            capacities;
LINDA MARTIN, former Dean School of
            Pharmacy, in her individual and
            official capacities;

▲ COURT USE ONLY ▲

Case No.:   17-CV-150-F

## COMPLAINT DISCRIMINATIONS TOWARDS STUDENT WITH DEPRESSION DISABILITIES BY PLACING STUDENT ON MANDATORY MEDICAL LEAVE WITHOUT DUE PROCESS, INACTION AND FAILED TO ASSESS AND PROVIDE NECESSARY REASONABLE ACCOMMODATIONS FOR STUDENT DIAGNOSED WITH CHRONIC DEPRESSION AND ADMITTED INPATIENT FOR DEPRESSION EXACERBATED INTO SUIDIAL IDEALIZATIONS

1

# Table of Contents

**Page**

TABLE OF CONTENTS ................................................................. 1

TABLE OF AUTHORITIES ........................................................... 2

I. NATURE OF THE ACTION .................................................... 3-4

II. INTRODUCTION................................................................. 5-8

III. JURISDICTION AND VENUE............................................... 8-9

IV. GENRAL ALLEGATIONS .................................................. 10-19

      A.     Standard of Review.................................................. 10-15

      B.     Discrimination Analysis ........................................... 16-19

V.CLAIMS FOR RELIEF...................................................... 20-29

## CASES

*Settlement Agreement between the United States of America and*
   *Quinnipiac University Under the Americans with Disabilities Act*
   (Agreement dated Dec. 29 2014) ......................................................... 12


*United States Department of Education Office for Civil Rights*
   Letter to Diane Y. Bower (Cleveland Office Dec. 16 2010)................... 15

## FEDERAL LAWS

The Americans with Disabilities Act (ADA) of 1990 .....................1, 5, 8, 9,21


The ADA Amendments Act of 2008 (ADAAA)...........................1, 5, 8, 9, 21


Section 504 of the Rehabilitation Act of 1973 ...............1, 5, 8, 9, 16, 24, 25


Section 1983 of the Civil Rights Act of 1871 ............................................ 20


Title II of the ADA ...............................................................1, 5,8,16, 22, 23


Section 102 of the Civil Right Act of 1991................................................. 28

COMES NOW, Plaintiff Jiying Wei, hereby submits her Complaint against the above named defendants as follows:

## I. NATURE OF THE ACTION

This is an action under Title II of the Americans with Disabilities Act (ADA), and section 504 of the Rehabilitation Act of 1973. This law is applicable to public institution – School of Pharmacy (SOP), University of Wyoming (UW), who receives federal financial assistance. The plaintiff, Jiying Wei alleges that Dean of the School of Pharmacy Linda Martin has discriminated her depressive disability by placing her under mandatory medical leave before she was discharged from mental institution without due process and failed to give grievance appeal hearing choice prior the decision of placing her on mandatory medical leave. The plaintiff, Jiying Wei, alleges the Dean of the SOP and Assistant Dean of Students Tonya Woods failed to give a fair risk assessment to the student after mental crisis and hospital discharge. Further more, Dean of SOP Linda Martin failed to give student fair assessment for accommodations after student received mandatory therapy treatment and ready to return school activities. All the mandatory medical leave, receiving mandatory therapy in another city on her own cost were against the student's will. It is a discriminatory act because the act has violated student's basic rights protected by federal laws. Also, the SOP had not showed student, nor had SOP had trained student with any mental health related mandatory medical leave policy, or policy of returning to school activities after mental crisis treatment, which indicate that neither SOP or UW have existing policy on mandatory medical leave and accommodations related to depression disability. It is a federal law violation to putting the plaintiff under mandatory medical leave after sent her to mental hospital for a "72 hours watch" (the actual stay was 8 days). It is a violation of ADA, ADAAA, Title II, and Section 504 to force student stay out of school for against her will before

explore possibility of letting her staying on campus and continue her study. It is also a federal

offense to place conditions of resuming school activities when the same mandatory therapy

approach and practice were not applied to general student body. The SOP has placed the plaintiff

in another outpatient mental health facility, away from campus, in a different city, away from the

student's resident in Laramie, at Cheyenne to receive supportive therapy after discharged from

in-patient hospital depression and suicidal treatment. The mandatory medical leave was intended

for unlimited amount of time, then proposed for one year (actual therapy lasted for more three

months), as condition of returning to school. The plaintiff also alleges that the University failed

to make necessary reasonable modifications to its policies, practices, and procedures when

student returned to school despite multiple requests expressed by the student. As a result of the

policy and procedure failure, and also the failure train student of any depression disability related

mandatory off school mandatory medical leave, student were not given any disability

assessment, or assessment of possibly accommodations, when student suffer from depression at

an out state location, SOP failed to recognize the depression related symptoms and issues,

refused to give student any accommodations again and directly caused student failing the

rotation. Student has suffered through the mandatory medical leave of absence, suffered through

SOP ignorance and absence of any accommodations upon returning to school. Because the

SOP's failure to act, student has failed the rotation at the outstate site. Furthermore, because

SOP's failure to act, student has been terminated from the program without a degree after more

than 7 years' worth of study. While all these happened, Ms. Wei has cleared by the hospital

psychiatrist before discharge as not pose danger to herself and there was no concern of public

danger related to her depressive condition.

## II. INTRODUCTION

1. Ms. Wei has reported depressive symptoms to her academic advisor multiple times prior to the suicidal crisis in August 2012, when she was sent to ER evaluation and then admitted into a mental institution placed "72 hours watch". She stayed in the hospital for 8 days until she was determined, by the hospital psychiatrist, with a diagnosis of chronic depression, but not a danger to herself and not to public at the time of discharge.

2. Ms. Wei has been diagnosed with chronic depression at the hospital exacerbated into self-harm suicidal idealization. This mental impairment substantially limits her major life activities of learning, concentrating, communicating and thinking. Accordingly, she has a disability within the meaning of 42 U.S.C. §12102 and 28 C.F.R.§ 36.104.

3. The SOP, UW is a public university of the state of Wyoming located at 1000 E University Ave, Larimer, Wyoming 82071.

4. The UW is a public university. It is a place of education within the meaning of 42 U.S.C.§ 12181(7). See also 28 C.F.R. §36.104.

5. Under Title II of the ADA, no public universities may discriminate against an individual on the basis of disability in full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. 42 U.S.C. § 12182(a).

6. Under Title II of the ADA, institutions and universities must make reasonable modification to its policies, practices and procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless making the modifications would fundamentally

alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A).

7. University of Wyoming discriminated against Ms. Wei by placing her on mandatory medical leave because of her depression, thereby denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of School of Pharmacy, University of Wyoming, on the basis of disability, in violation of 42 U.S.C. § 12182 and 28 C.F.R.§ 36.201. Specifically, School of Pharmacy, University of Wyoming failed to consider modifying its mandatory medical leave policy to permit Ms. Wei to complete her course work while living off campus receiving necessary therapy through University Counseling Center, which is free of charge for all other students, but deprived from Ms. Wei.

8. This is a discrimination case against a student with mental disability. Ms. Jiying Wei was a fourth year student attending the SOP, UW while she experienced and reported a mental crisis during a rotation. Ms. Jiying Wei's academic advisor concerned and sent her to the Emergency Room at Poudre Valley Hospital. The SOP is well aware of the student's mental disability while admitted her to the mental hospital for "72 hours Watch". The hospital has listed student's academic advisor Dr. Jenifer Petrie as emergency contact and has been communicate daily with the Dean Woods throughout student's treatment duration while the student was admitted and receiving treatment.

9. Jiying Wei was accepted into the Doctor of Pharmacy program and has studied for 3 full years receiving "outstanding student awards" for her academic performance. The incident happened while a rotation practice at the last year of the program, and it was the student's 3rd rotation toward graduation. Ms. Wei has received two A grades for both previous

rotations. Ms. Wei was regarded as a dedicated student with excellent academic performance.

10. Due to the inaction, intentional ignorance when student asked accommodations and consequences of their indifference and inactions. Defendants Janelle Krueger, Linda Martin, Tanja Woods are sued in both their official and individual capacities.

11. Following the mental hospital admission, Dean Martin dismissed Ms. Wei's academic advisor Prof. Jenifer Petree from that role, separated her from supporting and advocating for Ms. Wei. Dean Martin decided not to assist Ms. Wei upon discharge from the hospital and place Ms. Wei under mandatory leave upon discharge from the hospital and demanding Ms. Wei attending therapy as an outpatient in a SOP designated mental facility in Cheyenne, with no returning date, then recommended for the duration of one year. At the meantime, ignored Ms. Wei's intension of appeal and strong will of stay on campus and continue her education. Dean Woods told Ms. Wei that "it was for her own good". Dean Martin and Dean Woods were fully aware that the doctor has indicated that the student posts no public threat to other students and she was not trying to harm herself. For supportive therapy, she could have stayed on campus to continue her education while receiving therapy service available on campus. The free of charge service was provided to all students, but deprived from Ms. Wei.

12. The University had knowledge of Dean Martin and Dean Woods's discriminatory yet failed to take any action to address them. Rather, Defendant Dean Martin and Dean Woods have engaged in a pattern of ignorance and recognition of student's disability condition and continue such practices of discrimination until finally terminating student from the program. The duration of such discrimination practice was about a year. As a

further consequence, student has to admit into the hospital for depression in April of 2014. The discrimination practice has exhibited long-lasting negative effects in student's life.

13. As a result of subject student under discrimination, Dean Martin and Dean Woods had departed from the truth, an offense which, if sustained, would have mandated Dean Martin and Dean Woods's termination.

14. Dean Martin and Dean Woods, as the final decision makers for the SOP, refused to make any adjustment for Ms. Wei after she discharged from the 72 hours watch. As a result, Ms. Wei had to halt her school activities and forced to receive therapy at an anther town. Rather, Defendants Dean Martin, Dean Woods, SOP, UW College of Health, and UW attributed Defendant Dean Martin and Dean Woods' continuous ignorance, inaction towards student's federal protected rights to seek accommodations under ADA, failed to evaluate needs for accommodations, failed to recognize and provide accommodations when needed, failed to provide a policy to protect student with depression disabilities. As a result, no action was taken and no accommodations was evaluated or made by Dean Martin and Dean Woods and student was terminated from the SOP program she devoted more than 7 years.

## III. JURISDICTION AND VENUE

15. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343. Federal law protects students and employees from discrimination based on disability. This action is authorized and instituted under the March 2011 changed Title II of the Americans with Disabilities Act (applicable to the public institutions). The Americans with Disabilities

Act (ADA) of 1990, the ADA Amendments Act of 2008 (ADAAA), and Section 504 of the Rehabilitation Act of 1973.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because of unlawful discrimination practices alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Wyoming.

17. All procedural prerequisites for filing the lawsuit have been met. Plaintiff timely filed a Charge of Discrimination alleging disability discrimination against the School of Pharmacy, University of Wyoming with the U.S. Department of Education (DoEd). DoEd then transferred the complaint to the U.S. Department of Health and Human Services (HHS), Office for Civil Right (OCR), Region VIII on June 30, 2014. On March 21, 2017, I have asked HHS, OCR for a Notice of the Right to Sue, I have been told that HHS, OCR doesn't issue such a letter. This Complaint is being filed after pursued civil procedure. Therefore, under 42 U.S.C. § 12131-12134, Plaintiff has stratified all procedural prerequisites for suing in federal court.

18. Under the OCR regulation, on page 11 of 12-U.S. Department of Education, ADDITIONAL INFORMATION, Right to File a Separate Court Action, The complainant may have the right to file suit in Federal court, regardless of OCR's findings. A civil action in Federal court can be filed on after the complainant has exhausted administrative remedies. Administrative remedies are exhausted when 180 days have elapsed since the complainant filed the complaint with OCR and OCR has made no finding.

## IV. GENERAL ALLEGATIONS

### A. Background and Standard Review

19. Ms. Wei was accepted into the Doctor of Pharmacy, School of Pharmacy at the University of Wyoming in 2009 through normal application, interview and acceptance admission selection process.

20. Prior to the incident where Ms. Wei was admitted into the mental hospital following her academic advisor's recommendation to the ER room at the Poudre Valley Hospital, she had complained about depression issues to her academic advisor. Prof. Petrie has made recommendation and referral to Ms. Wei about the availability of the student council services on campus. Ms. Wei thought her depression was isolation related and situational; she chose to focus on school work and worked for 3 jobs while taking 19 to 21 credits per semester instead of receiving counseling therapy.

21. Between 2006 and 2012, she has already invested 4 years as undergraduate preparing for the Doctor of Pharmacy program and also 3 years in the program for all didactic classroom-setting learning.

22. Ms. Wei has received excellent awards for outstanding academic achievements prior heading out for the practical rotation year.

23. Ms. Wei initially rotation assignments and schedules were around Fort Collins, Denver area. All rotation located within 60 miles from her off campus residency.

24. When the 8 days hospitalization interrupted the 3rd rotation. The SOP immediately dismissed Dr. Petrie's role as her academic advisor and place her on mandatory medical leave with no returning date. As a return condition, SOP mandated Ms. Wei attend therapy at Peak Wellness mental facility until she is deemed ready to return to school and guarantee no further interruptive behaviors.

25. Ms. Wei attempted multiple times to express her will to seek accommodations to resume school activities. On October 16 2013, Complainant showed up at the rotation site as originally scheduled. She resumed half day learning activities fine before the experiential coordinator Dr. Janelle Krueger called the site and forced Ms. Wei stop leaning and exit the facility.

26. Student was forbidden in written, "not to contact any faculty member or preceptor for the purposes of creating an educational/rotation experience".

27. Dr. Petrie was listed as person of contact for the treatment at the hospital. SOP was contacted daily by the hospital for treatment updates and discharge plans. It is a fact that SOP was fully aware of Ms. Wei's medical condition. However, SOP ignored student's depressive related learning and communicative impairments. Right before Ms. Wei's discharge, Dean Martin dismissed Prof. Petrie from the role of academic advisor and placed Ms. Wei on mandatory medical leave without giving her a chance to return to school.

**B. Discrimination by the SOP, College of Health, University of Wyoming**

**Part A: Place Student under Mandatory Medical Leave Upon discharge from hospital against doctor's assessment, without due process**

28. Please refer to the case *Settlement Agreement between the United States of America and Quinnipiac University Under the Americans with Disabilities Act* (Agreement dated Dec. 29 2014), where the private university was found in vialation of Title III of the ADA failed to make reasonable modifications to its policies, practices and procedures when the modifications are necessary to afford goods, services, facilities, privileges, advanatages, or accommodations to individuals with disabilties.

29. After investigating the allegations, the United States has determined that Quinnipiac University discriminated against the Complainant by placing her on mandatory medical leave because of her depression, thereby denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Quinnipiac Univeristy, on the basis of disability, in violation of 42 U.S.C. §12182 and 28 C.F.R §36.201. Specifically, Quinnipiac University failed to consider modifing its mandatory medical leave policy to permit the Complainant to complete her course work while living off campus by attending classes either online or in person.

30. The Complainant alleged that SOP violated her federal protected rights for equal access to the education program when the Dean of SOP placed her under mandatory medical leave even Ms. Wei was declared as not posing danger to herself or to the general public.

31. When student discharged from the hospital, Dean Martin did not schedule a time to meet with the student. Student was instructed not to come to school, and report to Cheyenne to receive therapy at Peak Wellness, pending decision on what to do with the student.

32. SOP Dean Martin didn't offer university policy and regulation on the mandatory medical leave. There was no procedure review or risk assessment prior the replacement. Dean Martin didn't offer an appeal option to Ms. Wei for the imposed mandatory leave and cease of school activities. Dean Martin did not give any alternatives to the student. Student has emails multiple times raising questions and expressing frustration, all been ignored by Dean Martin and Dean Woods.

33. University Counseling Center is available to student free of charge. There was no assessment of the possibility of remain on campus receiving therapy while resuming school activities. There was no discussion on needs of accommodations. I was told to to "take care myself" and receive services from the SOP designated outside therapy facility. SOP didn't give the student a return date and returning condition was pending on therapist opinions/recommendations and decision from Dean Martin and Dean Woods.

34. At first, student was not given any returning date, then was informed to leave school for 1 year. Student contested and asked to meet with the supervisor. The facility then signed the student with the supervisor for assessment and therapy. When student kept telling the supervisor that she did not want to kill herself. All she wanted was to appeal the decision and get back to school, graduate as scheduled.

35. Student wrote multiple emails to plea the chance getting back to school.

36. Neither Dean Martin, Nor Dean Woods has informed student any way that student can resume school activities before placing Ms. Wei under Mandatory Medical Leave to a facility of their chosen, in another city, and make Ms. Wei pay all expenses for the treatment.

37. Dean Woods told Ms. Wei to report to Peak Wellness for outpatient treatment. SOP pointed the facility, and forced the choice and expenses to Ms. Wei.

38. On the evaluation before discharge, the doctor indicated in plain language that Ms. Wei post no danger to herself.

39. SOP did not meet with Ms. Wei after her discharge, before placing her to mandatory medical leave, during the therapy prior the supervisor of Peak Wellness issued a letter to SOP indicating it is Ms. Wei's best interest to resume school activity. At the mean time, Supervisor Elaine Renfro indicated Ms. Wei still need constant support and she should remain contact with Peak Wellness.

40. There is a student mental health counsel service available on campus that provides counseling service for students free of charge. Ms. Wei asked to stay on

campus and that option has never offered to Ms. Wei before Dean Martin decided

to place Ms. Wei on mandatory medical leave. As a matter of fact, Dean Martin

decided to put the student on mandatory leave, and she even chose the facility for

Ms. Wei, before Ms Wei's discharge.

41. SOP made the decision without any input of Ms. Wei. There was no assessment

for the need of on campus student counsel services, or the duration of outpatient

therapy. The condition of returning was vague and undetermined. There was no

notice of decision, no decision appealing procedure for the mandatory medical

leave. SOP failed to provide the policy or procedure to the student. No explanation

on mandatory medical leave or student's right to object the decision were provided

to student. SOP ignored Ms. Wei's basic federal rights as enrolled student without

the least regard.

**Part B – Student asked to resume rotations as originally scheduled. SOP placed**

**her to Casper Wyoming, and South Dakota for 4 months. SOP refused student's**

**requests for reasonable accommodations.**

42. Plese refer to the case *United States Department of Education Office for Civil Rights*

*Letter to Diane Y. Bower (Cleveland Office Dec. 16 2010)* where student was

proposed behavior contract included obligations and conditions of continued

enrollment, which include attend mandatory therapy; provide written confirmation

of attendance from a therapist; provide a release permission to discuss his case

with his therapist; comply with his therapist's treatment plan; maintain composure during classes; avoid stressful social situations that might trigger a crisis and contact certain University officials when in a crisis situation.

43. Without mentioning direct threat to self, OCR recited the direct threat-to-others analysis and determined that Spring Arbor could not avail itself of that defense because the University had failed to conduct an individualized assessment based on current medical advice or the best available objective evidence. OCR also assessed the disability discrimination claim under a disparate treatment analysis, asking whether similarly-situated, non-disabled students were treated differently. OCR found that the University perceived the Complaint as a qualified student with a mental impairment and then, on the basis of that perception, treated him differently from other students. OCR found the University in violation of Section 504 when "it conditioned (the student's) ability to remain enrolled at the University upon signing the behavior contact, and then refused to consider his readmission until he provided medical documentation to establish his condition and treatment."

44. In light of the reversed Title II regulations, it will apply a disparate treatment analysis to Section 504 involving self-harm. Applying the same standards to similarly-situated students with respect to behavior and readmission. If students with disabilities are treated differently, then the institution must have a policy to explain the disparate treatment with reference to an individualized assessment of particular risk factors associated with depression student has diagnosed. The case

determined that Spring Arbor "educational institutions cannot require that a student's disability-related behavior no longer occur, unless that behavior creates a direct threat that cannot be eliminated through reasonable modifications." Institution, such as SOP UW, cannot validly impose a behavior contact or demanding student to return "normal", as conditions for readmission.

45. SOP UW demanded student return as normal and able to meet standard behavior expectations prior to readmission. SOP UW has failed to recognize depressive impaired condition is a disability, not a "normal" state. For student with mental disabilities, SOP UW needs to provide reasonable modifications with policies to provide student with learning opportunities and facilitate their learning experiences.

46. The original scheduled rotation sites are all within 50 miles radius from where student resides, within Denver and Fort Collins area.

47. It was student's will to remain close to counseling service for continues therapy and support.

48. SOP ignored Ms. Wei's request and placed Ms. Wei more than 300 miles away to Casper, Wyoming and South Dakota for 4 months.

49. At South Dakota site, student exhibited withdrawal, crying and communication symptoms related to depression. SOP did not inform the site the student's mental condition. When the onsite supervisor emailed Janelle Krueger, the Clinical Associate Professor, that she observed some communication difficulties with the

student. Professor Krueger emailed her back saying there was nothing wrong with the student. Prof. Krueger instructed the site to keep high standards for the student.

50. Student had easy come to tears, anxiety, self-isolation and other emotional issues. Student's communication difficulties were perceived as lying, deceiving, and lack of professional behavior.

51. Even though student has passed all assignments, SOP decided to sign a D grade to the student because serious concerns on student's professionalism. Student failed on professionalism and failed for the rotation.

52. SOP expect student be "normal" upon returning from therapy and refuse to consider or assess student individual situation and provide any necessary accommodations. The ignorance and inaction of SOP toward the disability Ms. Wei was suffering has directly caused the failure of the rotation because student was discriminated and failed to have any reasonable accommodations to enable her to finish the rotation while suffering disabilities and learning impairments.

**Part C - Student appeal for the D grade she received from the South Dakota rotation and asked for another site to redo the rotation. SOP, College of Health and UW further refused to assess student's needs and provide necessary accommodations. Student terminated consequently because lack of necessary accommodations.**

53. Student filed complaint on what have happened at South Dakota and asked for another site to redo this elective rotation. Student has worked with her intern

license at Cheyenne Regional Medical Center and received 1800 intern hours, which was evaluated and accepted by the Board of Pharmacy, State of Wyoming. SOP refused to accept or reciprocal of those intern hours. In the history, SOP has accepted such hours as valid intern hours from other students.

54. Dean at College of Health conducted the hearing and told me that because the depression and accusation was filed under a separate case and there was investigation undergoing, I could not mention anything or bring any information related to that complain to the hearing.

55. With the restriction, I was not allowed to mention any emotional difficulties and communication issues at South Dakota site.

56. I failed to present a valid reason and the appeal was not overall successful.

57. Student tried to appeal at the university level and received rejection letter without further evaluation. After I exhausted all administrative appeal channels, I filed a complaint of discrimination against my depression disability with the Department of Education, Office of Civil Rights.

## V. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## Violation of Section 1983, Due Process Claims and Procedural Issues

58. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

59. As a student at SOP, Defendant failed to provide due process before placing Ms. Wei on Mandatory Medical Leave. The practice was procedurally flawed.

60. Placing Ms. Wei on Mandatory Medical Leave violated Ms. Wei's fundamental rights and "her freedom to acquire useful knowledge ... as essential to the orderly pursuit of happiness by freeman".

61. The effect of these practices deprived Ms. Wei of equal rights to attend school to achieve education due to Dean Martin and Dean Woods, SOP, College of Health, UW ignorance of depression as a disability and discriminated the student for forced mandatory medical leave and indifferent for the impairments she has suffered and directly caused the termination of the student from SOP, UW.

62. These unlawful practices were intentional.

63. The unlawful discriminatory practices were undertaken with malice or with reckless indifference to Ms. Wei's federally protected rights

## SECOND CLAIM FOR RELIEF

## DISCRIMINATION IN VIOLATION OF ADA OF 1990 AND ADAAA of 2008

64. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

65. Ms. Wei's mental crisis escalated her chronic depressive state. She was admitted into mental facility for suicidal watch and treatment (72 hours watch) for duration of 8 days. Ms. Wei's condition met all definition and criteria for depression disability, thus meet the criteria to be assessed upon returning to school activities for necessary accommodations to facilitate her continuous of education.

66. Placing her under mandatory medical leave has violated her fundamental rights and is a discriminative practice according to the ADA and ADAAA listed above because the same practice was not applied to general student body.

67. The unlawful employment practices include, without limitation, deprive student due process when placed her under mandatory medical leave, failed to assess her needs upon discharge from mental facility, denied her possibility of receiving therapeutic treatment on campus which could be free for her, failed to assess student's needs for accommodations upon returning to school, failed to provide accommodations upon student's request, indifferent when communication concerns raised during her outstate rotation which directly cause her failing of that elective rotation accused of lacking professional behavior. The discriminative practice of SOP, College of Health, and UW have directly caused student been terminated from the Doctor of Pharmacy program.

68. As a student of depression disability, Ms. Wei could have gained her degree with some considerations and appropriate individualized accommodations that would not cause much trouble to SOP. The SOP, College of Health and UW should have a policy in place for students who experience similar mental disabilities to receive equal opportunity for education at this public university.

69. The effect of these practices deprived Ms. Wei of equal opportunities for her access to education and otherwise adversely affected her pursuing a career she has devoted for more than 7 years.

70. These unlawful employment practices were intentional.

71. The unlawful practices were undertaken with malice or with reckless indifference to Ms. Wei's federally protected rights

**THIRD CLAIM FOR RELIEF**

**DISCRIMINATION IN VIOLATION OF TITLE II**

72. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

73. In March 2011, the U.S. Department of Justice fundamentally changed the legal framework in which universities could address student at risk for self-harm without running afoul of federal disability discrimination laws. This law set requirements for public university such as the SOP, College of Health, UW.

74. Petitioner has diagnosed with chronic depression and also admitted into mental facility for suicide exacerbated from depression. This mental impairment

substantially limits student's major life activities of learning, communication, concentration and thinking. The disability has been established within the meaning of 42 U.S.C § 12102 and 28 C.R.F. §36.104.

75. Defendants, SOP, College of Health, UW is a public university, and may not discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations.

76. Under Title II of the ADA, public university must make reasonable modifications to its policies, practices and procedures when the modifications are necessary to afford goods, services, facilities, privileges, and advantages, or accommodations to individuals with disabilities, unless making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

77. Defendant failed to provide due process before placing Ms. Wei on Mandatory Medical Leave. The practice was procedurally flawed.

78. Placing Ms. Wei on Mandatory Medical Leave violated Ms. Wei's fundamental rights to access fair educational program. Indifference to student's needs for reasonable accommodations, failed to provide the accommodations, failed to provide a policy that would enable disabled student to return to school activities and provide due process for the SOP decision of placing students on mandatory medical leave.

79. The effect of these practices deprived Ms. Wei of equal rights to attend school to achieve education due to Dean Martin and Dean Woods, SOP, College of Health, UW ignorance of depression as a disability, failed to have a policy at SOP, College of Health, and UW level for students suffer such mental disabilities and allow discriminative practices have consequence of terminating the student from SOP.

80. The effect of these practices deprived Ms. Wei of equal rights to attend school to achieve education due to Dean Martin and Dean Woods, SOP, College of Health, UW ignorance of depression as a disability and discriminated the student for the condition she has suffered.

81. These unlawful practices were intentional.

82. The unlawful discriminatory practices were undertaken with malice or with reckless indifference to Ms. Wei's federally protected rights

**FOURTH CLAIM FOR RELIEF**

**DISCRIMINATORY TREATMENT BECAUSE OF DISABILITIES**

**IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

83. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

84. As a student at SOP, Defendant failed to provide due process before placing Ms. Wei on Mandatory Medical Leave. The practice was procedurally flawed.

85. Placing Ms. Wei on Mandatory Medical Leave violated Ms. Wei's fundamental rights and "her freedom to acquire useful knowledge ... as essential to the orderly pursuit of happiness by freeman"

86. The effect of these practices deprived Ms. Wei of equal rights to attend school to achieve education due to Dean Martin and Dean Woods, SOP, College of Health, UW ignorance of depression as a disability and discriminated the student for the condition she has suffered.

87. SOP, College of Health, UW have failed to assess student with depressive disability needs for accommodations. No accommodation was provided when student asked. When communication issues raised during an out state rotation site, student's needs were ignored. The inaction and indifference practice from SOP, College of Health, UW have directly caused student's failing to the elective rotation in South Dakota and subsequently her termination for Doctor of Pharmacy program.

88. These unlawful practices were intentional.

89. The unlawful discriminatory practices were undertaken with malice or with reckless indifference to Ms. Wei's federally protected rights

## FIFTH CLAIM FOR RELIEF

## FAILURE TO TRAIN OR SUPERVISE UNDER § 1981

90. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

91. Defendant failed to provide due process before placing Ms. Wei on mandatory medical leave. The practice was procedurally flawed. There was no policy made aware to the student at SOP, College of Health, UW regarding mandatory medical leave proceedings. The depressive impairments assessment and reasonable accommodations, returning condition after mandatory medical leave, and student's obligations after returning to school activities were not covered by any training that have provided to the student while she was receiving education from the SOP Doctor of Pharmacy program. The discriminatory practice adapted by Dean Martin and Dean Woods were not granted by any existing policy and were not supervised or monitored by any existing procedure regarding mental disability impairment assessments and accommodations.

92. The defendant, SOP, College of Health, UW should have a policy in place regarding student with mental disabilities and learning and communicative difficulties. The procedure should include the evaluation for individual conditions from professional diagnosis and recommendations, evaluation on needs and individualized accommodations while attending school. Providing student option of staying on campus receiving therapy unless there are evidences proven through subjective assessments, that that option is not possible for specific and clear

reasons. The procedure should include due process for grieving and hearing for the procedure etc.

93. The effect of these practices deprived Ms. Wei of equal rights to attend school to achieve education due to Dean Martin and Dean Woods, SOP, College of Health, UW ignorance of depression as a disability and indifference of her needs for accommodations had grieve consequences.

94. SOP, College of Health, UW have failed to provide such procedure to the student body and failed to train the student such essential element of their student life. The inaction and failure of responsibilities to provide such procedure had grieving consequences to student's life. The consequences student had suffer were termination from SOP, and a lengthy suffering afterwards including second admission to mental hospital for depression treatment, for a period lasted for several years.

95. These unlawful practices were intentional.

96. The unlawful discriminatory practices were undertaken with malice or with reckless indifference to Ms. Wei's federally protected rights

**WHEREFORE**, Ms. Wei respectfully requests that the Court enter judgment in her favor and against the Defendants, and award the following relief, to the fullest extent allowed by law: (Section 102 of the Civil Right Act of 1991)

a. Reinstate Ms. Wei as student of the SOP, College of Health, UW;

b. Recognize and reciprocal with the intern hours Ms. Wei has obtained at Cheyenne Regional Medical Center, evaluated and accepted by the Board of Pharmacy, state of Wyoming, graduate her and enable her to seat on board exam with her ability and knowledge;

c. Back pay and related compensation, and front pay, in amounts to be determined at trial;

d. Compensatory and consequential damages, as allowed;

e. Emotional distress damages, as allowed;

f. Punitive damages, as allowed;

g. Injunctive and/or declaratory relief:

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

j. Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 31th day of August, 2017.
Respectfully submitted,
*s/ Jiying (Shelley) Wei*

7803 W Deschutes Ave. U285
Kennewick, WA 99336
Tel: (520) 245-0075
E-mail: shelleyjiyingwei@gmail.com



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS

1244 SPEER BLVD, SUITE 310
DENVER, CO 80204-3582

REGION VIII

ARIZONA
COLORADO
NEW MEXICO
UTAH
WYOMING

June 27, 2014

Mr. Bruce Moats
2515 Pioneer Avenue
Cheyenne, WY 82001

Re:   University of Wyoming, School of Pharmacology
      OCR Case Number 08-14-2219

Dear Mr. Moats:

On June 13, 2014, the U.S. Department of Education, Office for Civil Rights, Denver (OCR) received the complaint filed against the University of Wyoming, School of Pharmacology on behalf of your client, Ms. Jiying Wei.  You alleged that the University discriminated against Ms. Wei on the basis of disability.

Since you alleged an individual disability discrimination allegation involving a medical school, we are referring this matter to the U.S. Department of Health and Human Services (HHS), Office for Civil Rights, 999 18th Street, Suite 417, Denver, CO 80202 and to the U.S. Department of Justice (DOJ), Civil Rights Division, 950 Pennsylvania Avenue, NW, Office of Assistant Attorney General Main, Washington, DC 80530.  OCR is transferring the potential complaint in compliance with regulations of government-wide applicability pursuant to the Executive Order 12250 and 28 C.F.R. § 35.190, which mandates that certain disability complaints be investigated by the DOJ and HHS.

The date your correspondence was received by this Office will also be deemed the date it was received by the HHS and DOJ.  A representative of the HHS or DOJ will contact you concerning the processing of your case.

This transfer concludes OCR's consideration of your potential complaint.  Therefore, OCR is closing case number 08-14-2219 effective the date of this letter.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request.  If OCR receives such a request, we will seek to protect, to the extent provided by law, personal information, which if released, could constitute an unwarranted invasion of privacy.

Individuals who file a complaint or participate in an investigation are protected from harassment, retaliation, or intimidation under 28 C.F.R. § 35.134, and 34 C.F.R. §§ 106.71 and 104.61 as these incorporate 34 C.F.R. § 100.7(e).

If you have any questions or concerns about the closure of this complaint, please contact Ms. Heidi Kutcher, Attorney at (303) 844-4572.  You may also contact me at (303) 844-6083.

Sincerely,

Angela Martinez-Gonzalez
Supervisory General Attorney

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov



**U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES**
Office of the Regional Manager
Office for Civil Rights
999 18th Street, South Terrace, Suite 417
Denver, Colorado 80202
Telephone: (303) 844-7915
FAX: (303) 844-2025
TDD: (303) 844-3439

---

OCT 1 7 2014

Mr. Bruce T. Moats, Esq.
2515 Pioneer Avenue
Cheyenne, Wyoming 82001

  Re: Moats (on behalf of Wei) v. University of Wyoming, School of Pharmacy
     OCR Transaction Number: 14-189208

Dear Mr. Moats:

This correspondence regards the above-referenced complete complaint you filed on June 13, 2014 with the U.S. Department of Education (DoEd) on behalf of your client, Ms. Jiying Wei. DoEd transferred the complaint to the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), Region VIII, on June 30, 2014. You allege in your complaint that the University of Wyoming School of Pharmacy (UWSP) discriminated against Ms. Wei due to her disability (chronic depression) when it terminated her from the pharmacy program on July 29, 2013.[1]

OCR is responsible for enforcing a Federal law that protects the privacy and security of health information and a variety of Federal civil rights laws that prohibit discrimination. Specifically, OCR has jurisdiction over programs and entities that receive Federal financial assistance (FFA) from HHS in cases involving discrimination based on race, color, national origin, age, disability, and, under certain circumstances, sex and religion. Additionally, OCR has jurisdiction over health and human service programs operated by HHS or by state and local public entities in cases involving disability-based discrimination. OCR also has jurisdiction over health plans, health care clearinghouses, and certain health care providers with respect to enforcement of the Federal Standards for Privacy and Security of Individually Identifiable Health Information (the HIPAA Privacy and Security Rules and the HITECH Breach Notification Rules (45 Code of Federal Regulations (C.F.R.) Parts 160 and 164, Subparts A, C, D and E)).

---

[1] UWSP affirmed the termination pursuant to Ms. Wei's appeal on February 16, 2014.

OCR has accepted your disability discrimination claim for investigation under *Section 504* of the *Rehabilitation Act of 1973* (Section 504)[2] and *Title II* of the *Americans with Disabilities Act of 1990* (Title II of the ADA).[3] Section 504 prohibits discrimination by FFA recipients and applies to UWSP, an FFA recipient. Title II of the ADA prohibits discrimination in services, programs, or activities of state and local governmental agencies and their political subdivisions regardless of whether they receive FFA. As a public entity, UWSP must comply with Title II of the ADA.

Please be advised that Federal law prohibits an agency or institution from harassing, intimidating or retaliating against an individual who has filed a complaint or participated in the investigation of a complaint. Any such action may constitute a violation of 45 C.F.R. § 80.7(e), which applies to OCR investigations.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

Please be assured that our office is committed to resolving your complaint in an efficient and timely manner. Enclosed is a copy of the document *Information about OCR's Complaint Resolution Procedures* for your review.

Karel Hadacek, J.D., Equal Opportunity Specialist, has been assigned your complaint. If you have any questions regarding OCR's complaint resolution process, please contact Ms. Hadacek. She may be reached at (303) 844-7836 or via email at karel.hadacek@hhs.gov.

Sincerely,

Andrea Oliver
Regional Manager

cc:    Ms. Jiying Wei
       6420 Fossil Crest Drive
       Fort Collins, Colorado 80525

---

[2] 29 United States Code (U.S.C.) §§ 794, et seq., 45 Code of Federal Regulations (C.F.R.) Part 84
[3] 42 U.S.C.§§ 12131, et seq., 28 C.F.R. Part 35

OCR

# Gmail

COMPOSE

**Inbox (4,497)**
Starred
Important
Sent Mail
**Drafts (4)**
Junk
Notes
shane
Unwanted
More

J  Jiying      +

No recent chats
Start a new one

## OCR Transaction Number:14-189208 Right to Sue Letter

Inbox   x

**Jiying Wei** <shelleyjiyingwei@gmail.com>                    Mar 21
to HHS

Ms. Hadacek,

I have received a CD with a copy of record. Since then, I have mailed an appeal request following the instruction came with the letter.

I have not heard anything from your office since the appeal has been filed.

I have filed an law suit within 90 days after received your letter by myself at the Wyoming District Court. The case was dismissed because I didn't know what I was doing.

Now, I have talked to a lawyer and he wants a formal Right to Sue Letter from your office.


Would you please issue a Right to Sue Letter to my address at

Jiying (Shelley) Wei

6675 South Lemay Ave. Apt #B6
Fort Collins, CO 80525


Thank you!

**Hadacek, Karel (HHS/OCR)** <Karel.Hadacek@hhs.gov>                    Mar 21
to me

Ms. Wei,

The U.S. Department of Health and Human Services does not issue "right to sue letters."

Karel Hadacek

**From:** Jiying Wei [mailto:shelleyjiyingwei@gmail.com]
**Sent:** Tuesday, March 21, 2017 12:44 PM

.BeH Discharge Summary

WEI, JIYING - 595503

* Final Report *

| | |
|---|---|
| Result type: | .BeH Discharge Summary |
| Result date: | 08 August 2012 16:58 MDT |
| Result status: | Auth (Verified) |
| Result title: | Behavioral Health Discharge Summary |
| Performed By: | LIN MD, HELEN HWEI LING on 08 August 2012 17:27 MDT |
| Verified by: | LIN MD, HELEN HWEI LING on 10 August 2012 17:55 MDT |
| Encounter info: | 69250553, NCMC, Inpatient, 08/02/2012 - 08/08/2012 |

## * Final Report *

**Behavioral Health Discharge Summary (Verified)**

DATE OF BIRTH: 06/22/1973

DATE OF DISCHARGE:
08/08/2012

DATE OF ADMISSION:
08/02/2012

DIAGNOSTIC AND STATISTICAL MANUAL-IV DIAGNOSES:
AXIS I:  Dysthymic disorder.
AXIS II:  Borderline personality disorder.
AXIS III:  None.
AXIS IV:  Stress with work, school, finances, limited support, separation from
husband.
AXIS V:  Global assessment of functioning of 45.

BASIC IDENTIFYING INFORMATION:
The patient is a 39-year-old married Chinese female originally from Hong Kong
who was admitted on 72-hour hold and transferred from Poudre Valley Hospital
due to depression and suicidal ideation.

BRIEF DESCRIPTION OF HISTORY:
Please see the assessment done for admission on 08/02/2012 for further
details.  The patient is currently a doctoral student in pharmacy at the
University of Wyoming and had recently been accused of plagiarism.  As a
result, she has been increasingly depressed and stressed and verbalized
suicidal ideation with thoughts of drinking alcohol and taking pills or
getting into a car wreck.  She was brought to the emergency department by her
academic advisor Dr. Petrie.

HOSPITAL COURSE:
Eventually placed on short term certification. Very little insight and overall
resistant to treatment-- at times belittling the treatment.  She has a chronic
depression, likely dysthymic disorder.  She declined to sign release of information
forms for her husband or her family in Hong Kong.  Her husband called and reported
patient has a history of mood instability and reactivity including periods of
agitation with suicidal and even homicidal ideation--all suggestive of borderline
personality disorder.  She denied feeling depressed or anxiety.  She refused a trial

| | | |
|---|---|---|
| Printed by: | Breen, Deborah L | Page 1 of 4 |
| Printed on: | 05/02/2014 11:22 MDT | (Continued) |

**.BeH Discharge Summary**                                   WEI, JIYING - 595503

\* Final Report \*

of an antidepressant.  She denied suicidal or homicidal
ideation and denied psychosis.  She wanted to go home.  She has a very limited
support system in the community, and viewed her academic advisor, Dr. Petrie,
as her "friend."  Additional collateral history was obtained from Dr. Petrie
and a teleconference was held on 08/07 regarding the patient's status at the
University of Wyoming.  They have placed her on medical leave with
the plan that she will follow up with the outpatient therapist, and once the
outpatient therapist believes that she is ready to return to her clinical
rotations, the therapist will have to send a letter to associate Dean of
Student Affairs, whereupon her course work would restart and a hearing
for the plagiarism charge would then proceed.  She appears stunned by this,
but also accepted it.  She eventually gave consent to obtain collateral
information from a close male friend and this friend's father, who is a professor,
that the patient has known since about 2008.  After gathering this information as
well as setting up an
outpatient appointment, the patient was discharged with outpatient followup.
She continued to deny suicidal or homicidal ideation or psychosis through this
hospitalization. She planned to fight the plagiarism charges and had obtained an
attorney.

CONDITION ON DISCHARGE:
Denied suicidal or homicidal ideation.  Denied psychosis.  Very poorinsight
regarding treatment-- for now, she is agreeable to following up with individual
therapy due to the requirements of her doctoral program.

SUICIDE RISK ASSESSMENT:
Current ideation:  No.
Intent:  No.
Past attempts:  No.
Access to firearms:  No.
Male:  No.
Caucasian:  No.
Family history of suicide:  No.
Elderly:  No.
Adolescent or young adult:  No.
Widowed, divorced or single:  No, but she is separated from her husband.
Living alone:  Yes.
Unemployed:  No.
Mood disorder:  Yes.
Substance abuse:  No.
Cluster B personality:  Yes.
Hopelessness:  No.
Anxiety:  No.
Impulsiveness/aggression:  Not currently, though does have a history of aggression,
according to husband.
History of violence towards others:  Yes.
Current homicidal ideation:  No.

PROTECTIVE FACTORS:
Reasons for living:  Yes.
Children in the home:  No.
Positive social supports:  Yes.

.BeH Discharge Summary                                    WEI, JIYING - 595503

* Final Report *

Religious beliefs:  No.
Clozapine:  No.
Lithium:  No.

SUMMARY:
Acknowledging that some of these are chronic, unchangeable risk factors, the
risk factors that were able to be modified during this hospital course are:
The patient is not very receptive for treatment in general, but for now, she
is agreeable to following up with individual therapy, especially, since this
is what would be required for her to return to University of Wyoming.  She is
resistant to antidepressant trial, despite multiple discussions.  For now, she
will hopefully be developing a support system in the community and through her
therapist.  A close friend of hers is driving from Arizona to be of
support for her during this period.

MENTAL STATUS EXAMINATION:
Well-nourished Asian female in hospital attire.  Poor eye contact, appears
tired and less tense and angry compared to recent days.  No abnormal motor
movements.  Affect constricted.  Mood sad.  Speech fluent and not pressured.
Thought process:  Goal directed.  Thought content:  Denies suicidal or
homicidal ideation.  Denies psychosis.  Cognition grossly intact.  Insight
limited.  Judgment fair.

LABORATORY DATA:
During admission from Poudre Valley Hospital, TSH within normal limits,
comprehensive metabolic panel unremarkable.  Urinalysis with trace blood, 30
urine protein, otherwise unremarkable.  Urine drug screen negative.  CBC with
differential unremarkable, though another CBC with differential had exhibited
low hemoglobin at 13.0, hematocrit 38.2 and low RBC 4.18.

DISCHARGE MEDICATIONS:
None.

FOLLOWUP:
Foundations Counseling, therapist Lindsy Redman, on Thursday, 08/09/2012
at 3:00 p.m.  The patient is aware and agrees that she is required to attend
counseling
sessions with the eventual plan of her therapist to send a letter to the
University of Wyoming Associate Dean of Students Affairs, indicating that
patient is ready to return to her studies and clinical rotations.

INSTRUCTIONS:
The patient to call 911 or go to the nearest hospital if experiences suicidal
or homicidal ideation or worsening mood symptoms.

DISPOSITION:
Discharged to home with outpatient followup.  Her friend from Arizona
apparently is driving here to be of support, though will not be here in time
for her discharge.

## .BeH Discharge Summary

WEI, JIYING - 595503

* Final Report *

Helen Hwei Ling Lin, M.D.

HHL:nts
D:08/08/2012 17:27 MDT
T:08/09/2012 04:57 MDT
1100871/2630738
North Colorado Medical Center

**Completed Action List:**
* Perform by LIN MD, HELEN HWEI LING on 08 August 2012 17:27 MDTRequested on 08 August 2012 16:16 MST
* Transcribe by  on 09 August 2012 04:57 MDT
* Sign by LIN MD, HELEN HWEI LING on 10 August 2012 17:55 MDTRequested on 09 August 2012 04:58 MDT
* Modify by LIN MD, HELEN HWEI LING on 10 August 2012 17:55 MDT
* VERIFY by LIN MD, HELEN HWEI LING on 10 August 2012 17:55 MDT



# UNIVERSITY OF WYOMING

College of Health Sciences
Dean's Office
Dept. 3432 • 1000 E. University Ave. • Laramie, WY 82071
(307) 766-6556 • fax (307) 766-6608
admin.hs@uwyo.edu • www.uwyo.edu/hs

December 19, 2013

Ms. Jiiying (Shelly) Wei
724 Shadowmere Ct.
Fort Collins, CO 80525

Dear Ms. Wei,

The College of Health Sciences Student Affairs Committee met on December 13, 2013 regarding your appeal of the grade received in PHCY 6465. The majority of the committee voted to not support the petition for allowing you to repeat the rotation at a different site. I support the committee's decision and your petition is denied.

Respectfully,

Joseph F. Steiner, Pharm.D
Dean

Cc:    Dr. Linda Martin
       Dr. Tami Benham-Deal

# UNIVERSITY
# OF WYOMING

Office of Academic Affairs
Dept. 3302 • 1000 E. University Ave. • Laramie, Wyoming 82071
(307) 766-4286 • fax: (307) 766-2606
www.uwyo.edu/acadaffairs

February 16, 2014

Ms. Jiying Wei
906 E. Flint, Apt. 6
Laramie, WY 82072

Dear Ms. Wei:

I have reviewed the written appeal you provided regarding your PHCY 6473 grade and the material provided by the College of Health Sciences. After a thorough review and numerous consultations, I have decided to uphold the College's decision not to allow you to repeat the rotation at a different site.

I am sorry this is not the outcome you desire. Meanwhile, I truly wish you the best of luck in your future endeavors.

Sincerely,

Khaled A. M. Gasem
Associate Provost



**Peak**
**Wellness Center**

| ❏ Administrative Offices | ❏ Laramie County Center | ❏ Laramie County Adult | ❏ Laramie County Youth & | ❏ Transitions | ❏ The Chrysalis House |
|---|---|---|---|---|---|
| 510 West 29th Street | 2526 Seymour Avenue | Recovery Services | Family Services | 2310 East 8th Street | P.O. Box 610 |
| P.O. Box 1005 | Cheyenne, WY 82001 | 604 East 25th Street | 510 West 29th Street | Cheyenne, WY 82001 | Pine Bluffs, WY 82082 |
| Cheyenne, WY 82003 | Phone: 307-634-9653 | Cheyenne, WY 82001 | Cheyenne, WY 82001 | Phone: 307-632-6435 | Phone: 307-245-3444 |
| Phone: 307-632-9362 | Fax: 307-638-8256 | Phone: 307-637-3953 | Phone: 307-632-9362 | Fax: 307-635-7982 | Fax: 307-245-3224 |
| Fax: 307-635-2797 | | Fax: 307-638-6805 | Fax: 307-637-6852 | | |

October 8, 2012

Dr. Tonja M. Woods
Associate Dean of Student Affairs
College of Health Sciences
School of Pharmacy
Dept 3375
1000 East University Avenue
Laramie, WY 82071

RE: Jiying (Shelley) Wei

Dear Dr. Woods:

Ms. Wei was referred for services at Peak Wellness, following hospitalization for suicidal ideation, secondary to accusations of plagiarism in two projects related to completion of her PharmD at the University of Wyoming.

Ms. Wei states that "stealing someone else's work" was not her intent, but verbalizes understanding why this charge was made. She states she takes full responsibility for what she did. Ms. Wei has been seen by several clinicians during the past nine weeks. Ms. Wei was not seen the week of Sept 9, because she attended "Relflective Week" with her university program. She stated this was very important to her and made her feel she was still part of her program.

It is my opinion, and that of the entire treatment team, that Ms. Wei would be better served returning to her rotation schedule to work toward her degree. It appears counterproductive to her emotional health to further delay her persistence toward her goal.

Ms. Wei states she is no longer having any thoughts of suicide. She states she is happy to continue seeing me for supportive therapy and it is my feeling she might actually utilize "support", if she were back into her routine. She verbalizes understanding that any unwillingness to maintain professional demeanor at all times, respect rules and schedules, and accept feedback/criticism, will jeopardize her degree completion.

I will continue to see Ms. Wei and hope to forge a relationship of trust and guidance as she continues her work.

Please feel free to contact me with any concerns.

Sincerely,

Elaine Renfro, LCSW
Program Director
Out-Patient Mental Health & Substance Abuse services


UNIVERSITY
of WYOMING

October 16, 2012

Jiying Shelley Wei
2942 S. Moor Dr. Unit #3
Fort Collins, CO  80525

Dear Ms. Wei:

I received a letter from Elaine Renfro today discussing your therapeutic work with her at Peak Wellness. It is her recommendation that you return to your clinical rotations at this time. I will support her recommendation. Your rotation schedule indicates that you will return for Rotation #6 to Poudre Infusion in Ft. Collins, CO with Sharon Durfee, RPh on Monday, October 22, 2012.

Although you are being allowed to return to your rotations at this time, there are several points that I would like to make to ensure that you understand. We have had numerous meetings and have spoken in great detail about the importance of you focusing on your mental and emotional health in order for you to be successful in the PharmD program. Elaine feels that returning to the program will be positive for your mental health, however, please understand that I expect you to continue to receive support from Elaine at Peak Wellness and I will continue to check in with her on a regular basis for updates on your progress.

Also, as you have stated many times, your rotation schedule and the charges of plagiarism/academic dishonesty are separate issues. Please remember that as you resume rotations. A final decision has not yet been made on your case by the Dean of the School of Pharmacy, so please do not assume that returning to rotations means you are excused from accepting responsibility for those actions. Please realize that you are still a professional student in our program and are held to all professional and academic standards.

Your rotation requirements include: Internal Medicine I and II, Advanced Institutional Pharmacy, and 4 electives (one of which you will begin October 22, 2012). The experiential coordinator (Dr. Harshberger) will be in contact with you regarding your rotation schedule. It is important that you realize there may be necessary changes to your schedule as a result of your absence and you will need to be flexible to those changes.

College of Health Sciences
School of Pharmacy
Dept. 3375 • 1000 E. University Avenue • Laramie, WY 82071
(307) 766-6120 • fax (307) 766-2953
e-mail: uwpharmacy@uwyo.edu • website: www.uwyo.edu/pharmacy

At this time, you may resume contact with Dr. Petrie who serves as your academic advisor for any advising needs you may have. You may not contact any faculty member or preceptor for the purposes of creating an educational/rotation experience for you during the holiday break or during any other time frame in order to expedite your proposed/desired graduation date.

Please read the paragraph below, sign, and return one copy to me.

Please let me know if you have any questions.

Sincerely,

Tonja M. Woods, PharmD
Associate Dean of Student Affairs

By signing this letter, I agree that I am ready to resume rotations and feel that I am without risk for distraction. I understand that I must maintain professional behavior such as respecting rules, schedules, and deadlines. I must actively listen and accept constructive criticism and feedback or else I will jeopardize my degree completion. I will take ownership of my actions and not have defensive reactions.

Jiying Wei                    10-31-2012
_____              _____
Jiying Wei                   Date